COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| JUAN SALAS, | § | |
| | | No. 08-11-00321-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 171st District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20100D02928) |
| | § | |

## **O P I N I O N**

Appellant Juan Salas appeals his conviction of one count of theft of property valued at $20,000 or more but less than $100,000. TEX. PENAL CODE ANN. § 31.03(e)(5) (West 2011). After issuing our opinion in this case on December 27, 2013, the State timely filed its motion for rehearing asserting that we incorrectly applied the legal sufficiency standard of review and failed to view the evidence in the light most favorable to the jury's verdict when reforming the trial court's judgment. Having considered the State's motion and Appellant's response thereto, we grant the State's motion for rehearing, withdraw our original opinion issued December 27, 2013, and substitute this opinion in its place.

## **BACKGROUND**

In May 2010, the Restlawn Memorial Park Cemetery in El Paso, Texas reported to police

that three hundred and forty metal vases were missing from grave markers in the cemetery. Detective Jose Villalobos was assigned to the case and visited local metal recycling businesses to determine whether any of the vases had been brought there. At FL Scrap, Detective Villalobos found sixty-one vases matching the description of those taken from the cemetery. The owner of FL Scrap, Gustavo Flores Sr., informed Detective Villalobos that he had purchased between four and five hundred vases from the same individuals during the preceding month. Flores then sold the vases to Commercial Recycling in Vinton, Texas. Detective Villalobos visited Commercial Recycling and recovered one hundred and seventy-seven metal vases there.

While at Commercial Recycling, the detective received a call from FL Scrap that the individuals from whom they had previously purchased vases had returned to the business with more vases to sell. Police detained the individuals at FL Scrap. Appellant was one of two men taken into custody and identified by Flores and later at trial, as one of the individuals who had sold the metal vases to him. At the time of his arrest, seventeen vases were in Appellant's possession, bringing the total number of vases recovered by police to two hundred and fifty-five. Restlawn employees identified the two hundred and fifty-five vases as those taken from their grave markers, and the vases were returned to Restlawn. Appellant was subsequently indicted for the unlawful appropriation of property, the vases, of a value of $20,000 or more but less than $100,000, without the effective consent of owner Oscar Islas, with intent to deprive the owner of the property. Oscar Islas is named in the indictment as the owner of the property, he was the superintendent of grounds for Restlawn at the time of the thefts.

At trial, the sales manager of Restlawn Memorial Park, Armando Huante, testified that the cemetery sells the vases to families to be placed at individual grave markers. The cemetery

purchased each bronze vase at a wholesale price of $80 to $90 and sold them for $225. Mr. Huante testified some vases had been missing from the cemetery for years, and Restlawn only reported the thefts after multiple families had complained. He also testified on cross-examination that many of the vases were in a used condition as a result of water deterioration, oxidation effects, or alterations made thereto by those who had purchased them. Mr. Huante did not know the value of the used vases because Restlawn does not sell used vases. Mr. Huante testified that two and a half years earlier, the cemetery began selling zinc vases as a replacement option for $29, but did not testify as to the wholesale price of the zinc vases. Mr. Huante did not know how many of the recovered vases were bronze or zinc, but knew that some of each type were recovered.

Oscar Islas testified that he did not know how many of the vases returned to Restlawn were bronze or zinc. Mr. Flores of FL Scrap, testified that his business paid $1.60 per pound per bronze vase. Because each vase varied in weight, Mr. Flores estimated that he paid approximately $8 per vase.

At the conclusion of trial, the jury found Appellant guilty of theft over $20,000 but less than $100,000.

## DISCUSSION

In his sole issue on appeal, Appellant contends that the evidence was legally insufficient to support his conviction for theft of property valued at $20,000 or more but less than $100,000. We agree.

### *Standard of Review*

When reviewing the sufficiency of the evidence to support a criminal conviction, we view all of the evidence in the light most favorable to the verdict to determine whether a rational juror

3

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex.Crim.App. 2013); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex.Crim.App. 2010). It is the role of the trier of fact to determine the weight and credibility of the evidence and to draw reasonable inferences from the evidence. *Adames v. State*, 353 S.W.3d 854, 860 (Tex.Crim.App. 2011), *cert. denied*, 132 S.Ct. 1763, 182 L.Ed.2d 533 (2012). We uphold the verdict unless a rational fact finder must have entertained a reasonable doubt as to any of the essential elements of the offense. *Laster v. State*, 275 S.W.3d 512, 518 (Tex.Crim.App. 2009). The State bears the burden of proving each element of the offense beyond a reasonable doubt. TEX. PENAL CODE ANN. § 2.01 (West 2011).

*Analysis*

The statutory elements of theft are (1) that the charged person (2) unlawfully appropriated property (3) with the intent to deprive the owner of the property. *Geick v. State*, 349 S.W.3d 542, 546 (Tex.Crim.App. 2011). Additional elements establishing the owner, setting forth the way the property was unlawfully appropriated, and the value are authorized by the indictment. *Id.* Appellant contends that the State failed to prove three essential elements of the offense beyond a reasonable doubt: (1) the owner as named in the indictment, (2) the owner's lack of effective consent, and (3) the value of the property.

Because the State did not have Oscar Islas testify and did not question him when called by the defense regarding his alleged ownership of the vases, Appellant argues the State failed to sufficiently establish the owner element of the offense. Appellant further contends that even if Islas was established as an owner, he is not the correct owner because the vases were sold by the

4

cemetery to individual families and are therefore owned by the families and not the cemetery.

Appellant bases the first part of his owner-identity challenge on *Byrd v. State*, 336 S.W.3d 242, 258 (Tex.Crim.App. 2011) (theft conviction reversed because no evidence that connected the property to the owner listed on the indictment was presented at trial). However, *Byrd* is distinguishable because, here, evidence was presented connecting Mr. Islas to the property, as opposed to *Byrd,* where the named owner on the indictment was never mentioned at trial or connected to the property by any of the evidence. *Byrd*, 336 S.W.3d at 245. Both Mr. Huante, the sales manager of the cemetery, and Oscar Islas testified that Islas was the superintendent of grounds at the time of the theft.

Appellant's contention that the purchasers own the vases fails to consider that either an actual owner or a special owner may be used in the State's pleadings. TEX. CODE CRIM. PROC. ANN. art. 21.08 (West 2009); *Byrd*, 336 S.W.3d at 251-52. A special owner is someone who has actual control or custody for the property of another. *Harrell v. State*, 852 S.W.2d 521, 523 (Tex.Crim.App. 1993). The vases, although purchased and owned by others, were left in the custody and care of Restlawn Cemetery. As such, evidence that Oscar Islas was the superintendent of grounds in charge of caring for Restlawn Cemetery, is sufficient to establish Islas as a special owner of the vases. *Adames,* 353 S.W.3d at 860.

Appellant next contends the State failed to prove the vases were taken without the owner's effective consent as laid out in the indictment. He argues the State should have asked Mr. Huante or Mr. Islas whether Appellant had permission to take the vases, "admittedly, a silly question, but a question that has always been deemed necessary to a theft prosecution." However, Appellant fails to direct us to any legal authority in support of his assertion that direct questioning as to

5

consent is in fact necessary. As the State points out, lack of effective consent may be established by circumstantial evidence. *Taylor v. State*, 508 S.W.2d 393, 397 (Tex.Crim.App. 1974). In this case, Mr. Huante testified he reported the vases as stolen to the police. Mr. Huante and Mr. Islas both testified the vases had been taken and were later recovered. At no point did Appellant introduce contrary evidence to establish he had received consent to remove the vases. Based on the circumstantial evidence, a rational juror could have inferred that the vases were taken without the owner's effective consent. *Adames,* 353 S.W.3d at 860.

Appellant next claims the State failed to establish the value of the stolen vases was between $20,000 and $100,000. Value is the fair market value at the time and place of the offense or, if that cannot be ascertained, the cost of replacing the property within a reasonable time after the theft. TEX. PENAL CODE ANN. § 31.08 (West 2011). The purchase price of an item may qualify as fair market value at the time of the offense if the theft occurred relatively close to the time of the purchase. *Johnson v. State*, 676 S.W.2d 416, 418 (Tex.Crim.App. 1984). Value is not determined by purchase price when there is no evidence of the age of the item because it does not reflect value at the time of the offense. *Sweeney v. State*, 633 S.W.2d 354, 355-56 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd). If fair market value cannot be ascertained, then the cost the owner would incur to replace the property may be used to determine value. *Uyamadu v. State*, 359 S.W.3d 753, 759 (Tex.App.—Houston [14th Dist.] 2011, pet. ref'd) (owner's testimony pertaining to fair market value is presumed to be an estimate of fair market value, and owner may also testify regarding replacement cost).

In its brief on appeal, the State concedes Appellant's indictment failed to allege that the thefts occurred pursuant to a "single scheme or continuing course of conduct," as required under

6

the aggregation-of-amounts section of Section 31.09 of the Texas Penal Code. TEX. PENAL CODE ANN. § 31.09 (West 2011). *Whitehead v. State*, 745 S.W.2d 374, 376 (Tex.Crim.App. 1988) (aggregation of value for property stolen through a continuing course of conduct is an element of the crime and must be included in the indictment). The State acknowledges there was no evidence that the thefts occurred through a continuing course of conduct, and that the evidence is legally insufficient to prove the value of the stolen vases is between $20,000 and $100,000.

In its appellate brief, the State encouraged us to reform the judgment to reflect the lesser included offense of a single occurrence of theft of property valued in excess of $1,500 but less than $20,000 based on the seventeen vases that Appellant had in his possession at the time of his arrest. The State argued that because Mr. Huante testified that none of the ten vases identified in State's Exhibit 12[1] were zinc, the value of those bronze vases can be no less than $2,250. The State contended that the value of the vases was affirmatively established through Mr. Huante's testimony that the cemetery purchases bronze vases for $80 or $90 and sells them to customers for $225. It maintained that the fair market value of a bronze vase was $225 and the replacement value was $80 to $90.

In its motion for rehearing, the State contends we went too far in reforming the judgment to reflect theft valued based upon the value of the zinc vases. The State now argues that the trial court's judgment should be reformed to reflect a judgment for theft of $500 or more but less than $1,500 based upon the evidence presented during trial regarding the replacement value of the ten bronze vases. We agree.

We may modify a judgment to reflect a lesser-included offense if the evidence is legally

---

[1] State's Exhibit 12 was a photograph of ten of the seventeen vases recovered from Appellant.

insufficient to support the charged offense but legally sufficient to support conviction of a lesser-included offense. TEX. R. APP. P. 43.2(b); *Bowen v. State*, 374 S.W.3d 427, 432 (Tex.Crim.App. 2012) (where State has met burden of proving essential elements of offense of misapplication of fiduciary property beyond a reasonable doubt, but evidence to show amount of property shown to have been misapplied was legally insufficient to support a first-degree felony conviction, court of appeals properly reformed judgment to reflect a second-degree felony conviction).

The State presented evidence that ten bronze vases were recovered from Appellant and that the cost to the special owner, Mr. Islas, to purchase those vases is the wholeseale price of $80 to $90 per bronze vase. No evidence was presented at trial regarding the wholesale price of a zinc vase or how theft of any of the vases within a few years of purchase would affect their value. *Sweeney*, 633 S.W.2d at 355-56. Because fair market value cannot be ascertained, the replacement cost for an actual owner is the purchase price of a new or used vase. *See Uyamadu*, 359 S.W.3d at 759; *see also Drost v. State*, 47 S.W.3d 41, 46 (Tex.App.—El Paso 2001, pet. ref'd) (replacement value of the item separate from installation or additional parts or fees may be used to determine value). The replacement cost to Mr. Islas as the special owner of the stolen vases is the wholesale cost of the new vases.

The jury found Mr. Huante's testimony to be credible and we agree that his testimony was sufficient to prove beyond a reasonable doubt that Appellant possessed no fewer than ten bronze vases bearing a replacement cost of $80 to $90 each. Having reviewed the record in the light most favorable to the verdict, we conclude the State met its burden of proving that the replacement value of the ten bronze vases is $500 or more but is less than $1,500. TEX. PENAL CODE ANN. §

31.03(e)(3) (West 2011).

Based on this value, we modify the judgment to reflect the lesser-included offense of theft of property valued at $500 or more but less than $1,500. *See* TEX. R. APP. P. 43.2(b); TEX. PENAL CODE ANN. § 31.03(e)(3) (West 2011).

## CONCLUSION

The trial court's judgment is affirmed as modified and remanded for a new trial on punishment only.


GUADALUPE RIVERA, Justice

March 28, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)